**PORTER | SCOTT**

A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Matthew W. Gross, SBN 324007
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants SACRAMENTO COUNTY, BENJAMIN GONZALES, JARROD HOPECK, ROBERT RANUM and JEFFREY WILSON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXSEY PREDYBAYLO, an individual, | CASE NO.   2:19-CV-01243- MCE-CKD |
| Plaintiff | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SACRAMENTO COUNTY, CALIFORNIA, a county government and the operator of the Sacramento County Sheriff's Department and its Correctional Health Services Division; and Does 1 through 20, | Date: November 18, 2021<br>Time: 2:00<br>Location: Courtroom 7, 14th floor |
| Defendants. | FAC Filed: 8/29/19<br>Complaint Filed:  07/02/2019 |

{02464731.DOCX}

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     FACTUAL BACKGROUND ........................................................................2

        A. Plaintiff's Arrest ..................................................................................2

        B. Plaintiff's Sacramento County Main Jail Booking ............................2

        C. Plaintiff's Strip Search Inside the Main Jail Safety Cell .................3

        D. Sacramento County Jail Operations on Strip Searches ....................6

III.    LEGAL STANDARD ...................................................................................6

IV.     LEGAL ARGUMENT .................................................................................7

        A. Plaintiff's First Claim for Relief for Excessive Force Fails to Allege a
           Constitutional Violation ......................................................................7

        1. It was objectively reasonable under the totality of the
        circumstances for Deputies Hopeck, Ranum, and Gonzales
        to take Plaintiff to the ground to complete the strip search .....................8

        a. Nature of the Intrusion...........................................................................8

        b. Governmental Intrusion..........................................................................9

        c. Severity....................................................................................................10

        d. Threat ......................................................................................................11

        e. Resistance ...............................................................................................11

        f. Other Factors .........................................................................................12

        g. Balancing.................................................................................................12

        2. Defendants Hopeck, Ranum, Gonzales, and Wilson are
        entitled to qualified immunity for Plaintiff's alleged fourth
        amendment violation because they did not violate clearly established law ...........13

        B. Plaintiff's Second Claim for Relief for Monell Violation Fails
        to Allege a Constitutional Violation........................................................15

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL. 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1. There is no evidence of a constitutional violation........................................................16

2. There is no constitutional violation when a
defendant fails to follow internal policies .................................................16

3. There is no evidence of a custom, policy, or practice
that led to a violation of constitutional rights..........................................18

4. There is no evidence that the Sacramento County Sheriff's
Department was deliberately indifferent to the training needs of its deputies .....................19

V.    CONCLUSION ..........................................................................................20

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA  95825
TEL. 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Cases

2011 WL 2909891 (E.D. Cal., Jul. 13, 2011) .................................................................................. 12

2014 WL 2155233 (E.D. Cal., Apr. 9, 2014) .................................................................................. 12

Ackley v. Carroll,

    2011 WL 2160896 (E.D. Cal., June 1, 2011) .......................................................................... 12

Acosta v. Hill,

    504 F.3d 1323 (9th Cir. 2007) ................................................................................................... 7

Anderson v. Creighton,

    483 U.S. 635, 107 S. Ct. 3034 (1987) ..................................................................................... 14

Backlund v. Barnhart,

    778 F.2d 1386 (9th Cir. 1985) ................................................................................................. 17

Beal Bank, SSB v. Pittorino,

    177 F3d 65 (1st Cir. 1999) ........................................................................................................ 7

Bell v. Wolfish,

    99 S. Ct. 1861 (1979) ................................................................................................................ 7

Bell,

    411 U.S. ................................................................................................................................... 10

Blakenhorn v. City of Orange,

    485 F.3d 463 (9th Cir. 2007) ................................................................................................... 20

Board of County Comm'rs of Bryan County v. Brown,

    520 U.S. 397 (1997) ................................................................................................................ 18

Bonilla-Chirinos v. Maggiano,

    776 Fed.Appx. 520 (9th Cir. 2019) ........................................................................................ 17

Brown v. Bryan Co.,

    53 F.3d 1410 (5th Cir. 1995) ................................................................................................... 20

{02464731.DOCX}

iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan v. MacPherson,
   630 F.3d 805 (9th Cir. 2010) ...................................................................... 10, 11, 12

Bull v. City and County of San Francisco,
   595 F.3d 964 (9th Cir. 2010) .............................................................................. 10

C.V. by and through Villegas v. City of Anaheim,
   823 F.3d 1252 (9th Cir. 2016) ............................................................................ 13

Case v. Kitsap County Sheriff's Dept.,
   249 F.3d 921 (9th Cir. 2001) .............................................................................. 17

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ............................................................................................. 6

City and County of San Francisco v. Sheehan,
   135 S.Ct. 1765 (2015) ..................................................................................... 8, 14

City of Canton v. Harris,
   489 U.S. 378 (1989) ...................................................................................... 18, 19

City of Escondido v. Emmons,
   139 S. Ct. 500 (2019) ......................................................................................... 14

Connick v. Thompson,
   563 U.S. 51 (2011) ............................................................................................. 19

Cousins v. Lockyer,
   568 F.3d 1063 (9th Cir. 2009) ............................................................................ 18

Davis v. Mason County,
   927 F.2d 1473 (9th Cir. 1991) ............................................................................ 16

Davis v. Scherer,
   468 U.S. 183 (1984) ........................................................................................... 17

Davis v. Washington State Department of Social and Health Services,
   795 Fed.Appx 544 (9th Cir. 2020) ..................................................................... 17

District of Columbia v. Wasby,

135 S. Ct. 577 (2018) ........................................................................................... 14

Franklin v. Foxworth,

   31 F.3d 873 (9th Cir. 1994) ................................................................................ 10

Gillette v. Delmore,

   979 F.2d 1342 (9th Cir.1992) ............................................................................. 16

Graham v. Connor,

   490 U.S. 386 (1989) ..................................................................................... passim

Grant v. Palomares,

   2014 WL 466251 (E.D. Cal., Feb. 5, 2014) ....................................................... 12

Haugen v. Brosseau,

   351 F.3d 372 (9th Cir. 2003) .............................................................................. 18

Hillblom v. County of Fresno,

   539 F.Supp.2d 1192 (E.D. Cal. 2008) ............................................................... 16

Hunter v. Bryant,

   502 U.S. 224 (1991) ........................................................................................... 13

Hunter v. County. of Sacramento,

   652 F.3d 1225 (9th Cir. 2011) ............................................................................ 16

Johnson v. City of Vallejo,

   99 F. Supp. 3d 1212 (E.D. Cal. 2015) ............................................................... 19

Kisela v. Hughes,

   138 S. Ct. 1148 (2018) ................................................................................ 14, 15

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

   475 U.S. 574 (1986) ............................................................................................. 6

Mattos v. Agarano,

   661 F.3d 433 (9th Cir. 2011) .......................................................................... 7, 12

McDade v. West,

   223 F.3d 1135 (9th Cir. 2000) ............................................................................ 18

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Mercado v. City of Orlando,
    407 F.3d 1152 (11th Cir. 2005) ............................................................................ 19

Miller v. Clark Cnty.,
    340 F.3d 959 (9th Cir. 2003) .................................................................................. 7

Monell v. Department of Social Services,
    (1978) 436 U.S. 658 ....................................................................................... 16, 18

Moore v. Machado,
    2009 WL 4051082 (N.D. Cal., Nov. 20, 2009) ..................................................... 12

Mullenix v. Luna,
    136 S. Ct. 305 (2015) ............................................................................................ 14

Nesby v. City of Oakland,
    2007 WL 831765 (N.D. Cal. 2007) ...................................................................... 17

Pearson v. Callahan,
    555 U.S. 223 (2009) .............................................................................................. 13

Pierce v. Multnomah County,
    76 F.3d 1032 (9th Cir. 1996) .................................................................................. 7

Plumhoff v. Rickard,
    134 S. Ct. 2012 (2014) ......................................................................................... 15

S.B. v. County. of San Diego,
    864 F.3d 1010 (9th Cir. 2017) ..................................................................... 7, 14, 15

Scott v. Harris,
    550 U.S. 372 (2007) ............................................................................................... 7

Shafer v. County of Santa Barbara,
    868 F.3d 1110 (9th Cir. 2017) ....................................................................... 13, 15

Sheehan v. City & Cnty. of San Francisco,
    743 F.3d 1211 (9th Cir. 2014) .............................................................................. 20

Smith v. City of Hemet,

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

{02464731.DOCX}        vi

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

394 F.3d 689 (9th Cir. 2005) ........................................................................ 11

Tennessee v. Garner,

471 U.S. 1 (1985) ............................................................................... 7, 14

Thompson v. City of Los Angeles,

885 F.2d 1439 (9th Cir. 1989) .................................................................... 18

Ting v. U.S.,

927 F.2d 1504 (9th Cir. 1991) .................................................................... 19

Torres v. City of Los Angeles,

548 F.3d 1197 (9th Cir. 2008) .................................................................... 13

Via v. City of Fairfield,

833 F.Supp.2d 1189 (E.D. Cal. 2011) ......................................................... 16

Villegas v. Gilroy Garlic Festival Ass'n,

541 F.3d 950 (9th Cir. 2008) ...................................................................... 16

White v. Pauly,

137 S. Ct. 548 (2017) ........................................................................... 14, 15

Statutes

42 U.S.C. § 1983 .................................................................................... passim

PC 148(a)(1) ..................................................................................................... 2

PC 29800(a)(1) ................................................................................................. 2

PC 30305 ........................................................................................................... 2

Rules

Fed. R. Civ. P. 56(a) ....................................................................................... 7

Federal Rule of Civil Procedure, Rule 56(c) ................................................. 6

Other Authorities

Factors12 ........................................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I. <u>INTRODUCTION</u>

Plaintiff Alexsey Predybaylo brings two claims for relief against Defendants Sacramento County and Deputies Ranum, Gonzales, Hopeck, and Wilson for excessive force and a *Monell* violation regarding a visual strip search at the Sacramento County Main Jail.

On July 5, 2017, Plaintiff, a prior felon on parole, attempted to evade Sergeant Hall, a gang unit officer with City of Sacramento Police Department. Plaintiff was apprehended after a foot pursuit and found to be in possession of an AR-15. He was arrested for possession of a firearm and drugs and transported to the Sacramento County Main Jail. During the booking process, Plaintiff was uncooperative, and four deputies were required to supervise and control Plaintiff. During the booking photograph, video evidence shows Plaintiff passively resisted deputies multiple times by moving his body weight forward and dipping his shoulder. Plaintiff was then escorted into a padded safety cell to be strip searched based on his arrest charges and checked for contraband.

Once he entered the cell, video evidence shows Plaintiff continued to resist, including turning around towards Deputies Ranum and Hopeck. Sacramento County deputies and Sgt. Hall testified and observed Plaintiff failing to face the wall once his handcuffs were removed, failing to comply with verbal commands, and failing to comply after being placed in a hand control hold. As a result, Defendants Ranum and Gonzales grabbed Plaintiff's legs and Defendant Hopeck grabbed Plaintiff's upper body and placed him on the ground so the strip search could be completed. Deputies completed the strip search by removing Plaintiff's pants and underwear; Plaintiff was subsequently booked into a housing unit at the Sacramento County Main Jail.

Defendants bring this Motion for Summary Judgment because the undisputed material evidence shows that no Defendants used excessive force to complete the strip search. Because Plaintiff cannot establish a violation of a constitutional right, his *Monell* claim also fails as a matter of law. The Sacramento County Operations Order on use of force, was not the moving force behind Plaintiff's strip search or any improper conduct. Defendants properly applied the General and Operations orders on use of force and strip search, and used the least amount of force necessary to complete the strip search. As such, Plaintiff's claims fail.

{02464731.DOCX}                                         1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# II. FACTUAL BACKGROUND

**A.     Plaintiff's Arrest**

On July 5, 2017, Plaintiff was on parole and could not possess firearms. (Undisputed Material Facts "UMF" 1) On the afternoon of July 5, 2017, Sacramento Police Department Sgt. Hall, supervisor of the South Sacramento Gang Enforcement Team, was patrolling the Carmel Point Apartment Complex and spotted Plaintiff near a vehicle. (UMF 2) Sgt. Hall had previously viewed photographs Plaintiff posted on social media with an assault rifle and was aware that (i) Plaintiff was on parole and (ii) could not possess any firearms. (UMF 3) As Sgt. Hall approached the vehicle and Plaintiff in the parking lot, Plaintiff began running away with a backpack. (UMF 4) Sgt. Hall pursued Plaintiff and located him very quickly around a corner of the apartment complex. Plaintiff was laying on the ground with an AR-15 and a 30-round magazine loaded with .223 ammunition thrown next to him in the bushes. (UMF 5) Sgt. Hall searched the vehicle where Plaintiff was last seen and located methamphetamine. (UMF 6) Plaintiff was arrested for (1) Felony (PC 29800(a)(1))—possession of a firearm by a felon; (2) Felony (PC 30305)—felony in possession of ammunition; (3) Felony (Health & Safety)—possession of controlled substance while armed; (4) Misdemeanor (Health & Safety)—possession of controlled substance; and (5) Misdemeanor (PC 148(a)(1))—resisting or obstructing peace officer, and Plaintiff was taken to the Sacramento County Main Jail. (UMF 7)

**B.     Plaintiff's Sacramento County Main Jail Booking**

At approximately 4:39 p.m., Plaintiff arrived at the Sacramento County Main Jail. (UMF 8) Plaintiff began the booking process with a cursory pat down, removing his shoelaces and belt. (UMF 9) Next, Sgt. Hall completed the arresting paperwork inside the Jail and Plaintiff was examined by medical personnel to be medically cleared. (UMF 10) At approximately 5:11 p.m., Plaintiff was taken to the medical intake screening, and Plaintiff reported he had taken Xanax and Norco. (UMF 11) The medical intake screening form indicated that Plaintiff was detoxing from Xanax and Norco and indicated medical personnel would follow up with Plaintiff once he was booked into a housing unit. (UMF 12) Plaintiff also reported he had scrapes along his knee from

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

running away from SPD Sgt. Hall. (UMF 13) During the booking process, Sgt. Hall informed Plaintiff that he needed to confiscate Plaintiff's clothes for evidence. (UMF 14) Deputy Hopeck testified that Plaintiff became upset that his clothing would be taken. (Ex. B –Hopeck Depo 16:23-17:25, 65:16-66:5) Deputy Hopeck recalled Plaintiff stating he would report the officers to Internal Affairs if his clothing was taken. (Ex. R – PF 10 Incident Report) Around this time, Deputy Hopeck recalled hearing noise/yelling from the nurses' station and arrived with other Sacramento County deputies to maintain an additional security presence. (UMF 15) Plaintiff was medically cleared and transferred into Sacramento County's custody; Plaintiff was next escorted for his booking photo. (UMF 16)

Plaintiff remained in handcuffs and was escorted by Deputies Hopeck and Ranum, while Deputies Gonzales and Wilson operated the fingerprint machine and camera. (UMF 17) Anytime an arrestee is handcuffed and escorted by two or more deputies for their booking photo, it indicates that the arrestee has been uncooperative. (UMF 18) Deputies Ranum and Hopeck held Plaintiff's arms while the photographs were taken of Plaintiff's front and side profiles. (UMF 19) Video surveillance shows Plaintiff moving his right arm around and trying to get it to the front of his body. (UMF 20) Plaintiff attempted multiple times to move his right arm and pull away from Deputy Hopeck at his side. (UMF 21) Approximately 20 seconds into the booking photo, Deputy Ranum grabbed Plaintiff's left elbow because Plaintiff was continuing to move around during the photo including jerking his body and shoulder downwards. (UMF 22) Deputies Gonzales, Ranum and Hopeck were aware and believed that Plaintiff was passively resisting, while in handcuffs, throughout the booking process, and these are early indicators for deputies that an arrestee can become violent. (UMF 23)

## C. Plaintiff's Strip Search Inside the Main Jail Safety Cell

After taking his booking photographs, Plaintiff was escorted by Deputies Hopeck, Ranum, Gonzales, and Wilson for a strip search inside Safety Cell #2. (UMF 24) Plaintiff remained in handcuffs. (UMF 25) The safety cell is a small cell with a video camera, padded floor, and a drain where deputies strip search felony arrestees for drugs and weapons prior to placing them in a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   housing unit. (UMF 26) Sacramento County Main Jail policy requires deputies to strip search

2   arrestees when they are brought in for drug possession, gun charges, or violence charges. (UMF

3   27) Since Plaintiff was arrested for felony possession of firearms and drugs, deputies needed to

4   visually strip search him inside a safety cell. (UMF 28) Strip searches that involve more than two

5   deputies usually indicate the arrestee is not cooperative. (UMF 29) Plaintiff had previously been

6   strip searched at the Main Jail inside a safety cell with only one deputy but could not recall why

7   four deputies were required for this strip search. (UMF 30)

8       As they entered Safety Cell #2, video surveillance[1] shows Deputy Ranum holding

9   Plaintiff's left arm and Deputy Hopeck holding Plaintiff's right arm. (UMF 31) Deputy Gonzales

10  pointed at the camera and asked Plaintiff if he had any additional drugs hidden on his body. (UMF

11  33) Plaintiff did not answer and can be seen on surveillance turning around to face to deputies.

12  (UMF 34) Deputy Gonzales covered the camera and the remaining undisputed facts are based on

13  Plaintiff's testimony. (UMF 35)

14      Deputies removed Plaintiff's handcuffs and he took off his shirt, socks, and shoes without

15  incident. (UMF 36) Plaintiff next needed to remove his pants and underwear. (UMF 37) He was

16  approximately one foot away from the wall. (UMF 38) Deputies testified Plaintiff was passively

17  resisting once the camera was covered by following directions and taking off an article of clothing,

18  and then not following directions to safely complete the strip search. (Ex B – Hopeck Depo 83:13-

19  84:1; Ex C – Ranum Depo 29:25-30:4, 37:9-38:1, 50:20-25; Ex. D – Gonzales Depo 18:17-20:8,

20  44:21-45:9). Deputy Hopeck first used verbal commands to get Plaintiff to comply with the strip

21  search, face the wall, and remove his pants. (Ex B – Hopeck Depo 71:12-72:9) Plaintiff complied

22  and faced the wall but then turned around again and did not follow the directives on how to do

23  strip search safely. (Ex B – Hopeck Depo 11:5-12:15, 16:5-9, 16:23-17:16, 18:1-9, 85:22-86:1,

24  86:12-17)

25      Deputy Hopeck ordered Plaintiff to put his hands behind his back. (UMF 39) Plaintiff put

---

[1] Sacramento County Main Jail covers the cameras inside the safety cells with a post-it note because the video is shared with non-law enforcement County employees. Therefore, deputies remove the post-it note and ask the arrestee if they have drugs/weapons. Afterwards, they cover the camera for privacy and begin completing the strip search. There are only approximately 11 seconds of video prior to the strip search captured on camera. (UMF 32)

{02464731.DOCX}                                    4
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

1  his hands behind his back. (UMF 40) Deputy Hopeck then grabbed and controlled Plaintiff's

2  thumbs and ordered Plaintiff to relax his thumbs. (UMF 41) Deputy Hopeck used a control hold so

3  that an arrestee cannot spin around if the arrestee does not comply. (UMF 42) Plaintiff continued

4  to turn his body and feet towards deputies Ranum and Hopeck once his handcuffs were removed.

5  (UMF 43) Plaintiff's actions by turning around in the safety cell were an indicator to the deputies

6  that Plaintiff presented safety concerns and he may try to harm deputies. (UMF 44)

7     Deputy Hopeck ordered Plaintiff a second time to relax his thumbs. (UMF 45) Deputy

8  Hopeck recalled Plaintiff actively resisting by pulling his body, not following directions, moving

9  around, and pulling away from deputy's grasp. (Ex B – Hopeck Depo 12:9-15, 86:12-17) Deputy

10  Hopeck remembers Plaintiff yelling threats and saying "I don't have to do this" and "You're going

11  to [Internal Affairs]" if he was strip searched and his clothing taken. (Ex B – Hopeck Depo 16:23-

12  17:25, 65:16-66:5). Deputy Hopeck recalled that Plaintiff refused to lay on his belly to complete

13  the strip search. (Ex B – Hopeck Depo 69:7-17, 70:25-71:11, 85:22-86:4; Ex R – PF 10 Incident

14  Report) Deputy Ranum and Gonzales then grabbed Plaintiff's pant legs from underneath him and

15  pulled him on the ground. (UMF 46) Deputy Hopeck controlled Plaintiff's thumbs for part of the

16  descent and then let go. (UMF 47) Plaintiff does not recall which body part hit the ground first but

17  testified he remembered hitting his head on the padded floor. (UMF 48)

18     Deputy Hopeck placed a knee over Plaintiff's shoulder and head so that Plaintiff could not

19  turn and face deputies. (UMF 49) Plaintiff believes he blacked out during the strip search for a few

20  seconds because he does not remember how Deputy Hopeck shifted his body to maintain his

21  control holds. (UMF 50) Sacramento County deputies never force an inmate to spread their anus,

22  the inmate must spread it on their own. (UMF 51) Deputies removed Plaintiff's pants and

23  underwear and Plaintiff completed the strip search. (UMF 52)

24     During the entire strip search process, Plaintiff was not punched or kicked by any deputies.

25  (UMF 53) The entire strip search process lasted approximately 4 minutes long. (UMF 54) Deputy

26  Gonzales removed the post-it note and Plaintiff can be seen on the ground with Deputy Hopeck

27  maintaining control of Plaintiff's upper body and Deputy Ranum controlling Plaintiff's legs.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

1  (UMF 55). Plaintiff put on a paper suit, was placed into a holding cell, and eventually moved into

2  a housing unit at the Sacramento County Main Jail. (UMF 56)

3  **D.    Sacramento County Jail Operations on Strip Searches**

4  Sacramento County Operations Order—Prisoner Searches (k)(1)-(4) states:

5  k. Arrestees and inmates do not have the right to refuse lawful physical body cavity searchers.

6  (1) A refusal will be deemed additional reasonable suspicion to believe the arrestee is in possession of contraband or weapons. Staff will treat reseals with due caution.

7  (2) After a cursory search of a refusing inmate they shall be placed in an isolation cell with the water turned off and a supervisor will be notified. Such an inmate

8  shall not be housed, allowed access to a phone or released until the search is completed.

9  (3) The refusing inmate shall remain in isolation until he/she complies or the supervisor authorizes the search

10  (4) If the inmate continues to refuse, the supervisor may authorize a forcible search. The supervisor, or an alternate supervisor of the same sex as an inmate, shall

11  remain present during the search and force shall cease if the inmate begins to comply. (UMF 57)

13  Lt. Orlando Mayes, the County's person most knowledgeable on Sacramento County

14  Jail/Operation Orders testified that Prisoner Searches (k)(1)-(4) is not a sequential policy which

15  requires deputies to numerically apply the policy but rather are options available for a deputies

16  utility. (UMF 58) Deputy Hopeck testified the policy applies when searching the genital area or

17  mouth and does not apply for the removal of an arrestee's clothing. (UMF 59)

18  **III. LEGAL STANDARD**

20  Under Federal Rule of Civil Procedure, Rule 56(c), summary judgment is proper if the

21  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

22  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

23  party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322

24  (1986). As the Supreme Court explained, "[w]hen the moving party has carried its burden under

25  Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt

26  as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

27  (1986). Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to

28  find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587. Upon a showing that

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX. 916.927.3706

1  there is no genuine dispute of material fact as to particular claim(s) or defense(s), the court may

2  grant summary judgment in the party's favor on "each claim or defense – or the part of each claim

3  or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a); <u>Beal Bank, SSB v.</u>

4  <u>Pittorino</u>, 177 F3d 65, 68 (1st Cir. 1999).

5  ## IV. LEGAL ARGUMENT

6
7  **A.    Plaintiff's First Claim for Relief for Excessive Force Fails to Allege a Constitutional
        Violation**

8       In general, claims of excessive force, whether deadly or not, should be analyzed under the

9  objective reasonableness standard of the Fourth Amendment as applied in <u>Scott v. Harris</u>, 550

10 U.S. 372 (2007); <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989); <u>Tennessee v. Garner</u>, 471 U.S. 1

11 (1985); <u>Acosta v. Hill</u>, 504 F.3d 1323 (9th Cir. 2007). The specific constitutional right is

12 determined by the plaintiff's custodial status. <u>Pierce v. Multnomah County</u>, 76 F.3d 1032, 1042

13 (9th Cir. 1996). The Fourth Amendment governs claims of excessive force during a seizure of a

14 free citizen. <u>Graham</u>, 109 S. Ct. at 1871. In the Ninth Circuit, this protection lasts until

15 arraignment. <u>Pierce, 76 F.3d at 1043</u>. The Due Process Clause of the Fourteenth Amendment

16 protects pretrial detainees from excessive force that amounts to punishment. <u>Graham</u>, 109 S. Ct. at

17 n.10 (citing <u>Bell v. Wolfish</u>, 99 S. Ct. 1861, 1871-74 (1979)). In assessing reasonableness, the

18 court should give "careful attention to the facts and circumstances of each particular case,

19 including the severity of the crime at issue, whether the suspect poses an immediate threat to the

20 safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

21 arrest by flight." <u>Graham</u>, 490 U.S. at 396. The Ninth Circuit has repeatedly emphasized that the

22 most important factor is "whether the suspect posed an immediate threat to the safety of the

23 officers or others." <u>S.B. v. County. of San Diego</u>, 864 F.3d 1010, 1013 (9th Cir. 2017).

24       The court's consideration of reasonableness is not limited to these three factors as a court

25 must consider the totality of the circumstances and weigh the gravity of the intrusion against the

26 government's interest to determine whether the force employed was constitutionally reasonable.

27 <u>Miller v. Clark Cnty.</u>, 340 F.3d 959, 968 (9th Cir. 2003); <u>Mattos v. Agarano</u>, 661 F.3d 433, 441

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

1   (9th Cir. 2011) ("[i]n assessing the governmental interest at stake under <u>Graham</u>, we are free to

2   consider issues outside the three enumerated [factors... when additional facts are necessary to

3   account for the totality of circumstances in a given case.")

4       "The reasonableness of a particular use of force must be judged from the perspective of a

5   reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 US

6   at 396. In addition, "[t]he calculus of reasonableness must embody allowance for the fact that

7   police officers are often forced to make split second judgments—in circumstances that are tense,

8   uncertain, and rapidly evolving—about the amount of force that is necessary in a particular

9   situation. <u>Id</u>. at 396-397 As stated by the Supreme Court, "[t]he Fourth Amendment standard is

10  reasonableness, and it is reasonable for police to move quickly if delay 'would gravely endanger

11  their lives or the lives of others.' This is true even when judged with the benefit of hindsight, the

12  officers may have made 'some mistakes.' The Constitution is not blind to 'the fact that police

13  officers are often forced to make split-second judgments.'" <u>City and County of San Francisco v.</u>

14  <u>Sheehan</u>, 135 S.Ct. 1765, 1775 (2015).

15      For the reasons discussed below, the undisputed material facts demonstrate that Plaintiff

16  was uncooperative during the booking photo and required more deputies to control him throughout

17  the booking process and strip search. Deputy Hopeck ordered Plaintiff to place his hands behind

18  his back and relax his thumbs while Plaintiff continued turning around, without handcuffs,

19  towards the deputies. After multiple warnings to relax his thumbs, Plaintiff was pulled to the

20  ground and his clothing removed. It is objectively reasonable that Deputies used minimal force by

21  pulling Plaintiff to the ground to complete the strip search.

22      1.   **It was objectively reasonable under the totality of the circumstances for
             Deputies Hopeck, Ranum, and Gonzales to take Plaintiff to the ground to
             complete the strip search**

24          **a. Nature of the Intrusion**

25      Here, Deputies Hopeck, Ranum, and Gonzales needed to complete the strip search prior to

26  permitting Plaintiff to continue the booking process and be placed in a housing unit. Based on

27  Plaintiff's arrest for drugs/weapons, he needed to be strip searched to verify Plaintiff was not

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX. 916.927.3706

1  bringing drugs/weapons into the Main Jail. Plaintiff will argue deputies should have stepped away

2  and locked Plaintiff inside the safety cell after receiving verbal noncompliance, and should not

3  have escalated to using force. This was not an option for numerous reasons. First, deputies were

4  concerned if they released their control holds on Plaintiff, based on his prior noncompliance inside

5  the safety cell and throughout the booking process, Plaintiff could turn around and strike a deputy

6  inside the safety cell. (UMFs 20-23, 29, 34, 44) Once deputies went hands on and used control

7  holds on Plaintiff, it would be unsafe to disengage, step back, and try to reengage at a later point.

8  (UMFs 20-23, 29, 34, 44, 60) Second, deputies are hesitant to leave arrestees alone in the safety

9  cell if they are arrested for drug possession, have drugs in their anus, and the bag breaks—causing

10  the arrestee to OD. (UMF 61) Third, Sacramento PD Sgt. Hall needed Plaintiff's clothes for

11  evidence and deputies were concerned Plaintiff could damage the evidence in the safety cell if he

12  were left alone. (UMFs 14, 62) Therefore, the safest option for all parties was to maintain control

13  of Plaintiff and continue with the strip search by slowing escalating the control holds.

14      The nature of the intrusion is minimal. First, Defendants used verbal commands and

15  techniques including their "verbal judo" to gain compliance. (UMFs 41-45) Next, Deputy Hopeck

16  used a control hold by grabbing Plaintiff's thumbs while Plaintiff was out of handcuffs. (UMFs

17  41-45) Plaintiff continued to try and turn towards the deputies. (UMFs 43-44) Afterwards,

18  Defendants escalated to the next amount of possible force—grabbing Plaintiff's legs and body,

19  and placing him on the ground. (UMF 46) The amount of force used by the deputies was the

20  smallest possible amount to continue proceeding with the strip search. There are no further control

21  holds Deputy Hopeck could have used (or was required to use) to have Plaintiff complete the strip

22  search. Furthermore, Deputy Wilson never touched or was involved in any control holds on

23  Plaintiff. (UMF 63) Deputy Wilson only stood at the door to protect the entrance as a point of

24  entry. (UMF 64). Simply put, Deputy Wilson did not engage in any touching or force used on

25  Plaintiff and should thus be dismissed.

26              **b. Governmental Intrusion**

27      The Ninth Circuit has held that "[u]nder <u>Graham v. Connor</u>, we evaluate the government's

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

interest in the use of force by examining three core factors, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Bryan v. MacPherson</u>, 630 F.3d 805, 826 (9th Cir. 2010) (citing <u>Graham</u>, 490 U.S. at 396). These factors are not, however, exclusive: "whatever specific factors may be appropriate in a particular case, whether or not listed in Graham," should be considered. <u>Bryan,</u> 630 F.3d at 826 (citing <u>Franklin v. Foxworth</u>, 31 F.3d 873, 976 (9th Cir. 1994).

Courts have routinely recognized that strip searches serve important penological interests and strip searches are "reasonable given the institutional needs and objectives, particularly the security concerns." <u>Bell,</u> 411 U.S. at 559. Strip searches are necessary not only to discover but also to deter the smuggling of weapons, drugs, and other contraband into the institution because a "detention facility is a unique place fraught with serious security dangers," and that "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence." <u>Id.</u>; quoting <u>Bull v. City and County of San Francisco,</u> 595 F.3d 964, 973 (9th Cir. 2010).

Here, the government had a significant interest in using force because Plaintiff needed to be striped searched based on his felony weapons/drug charges. Plaintiff could not be booked into a housing unit until deputies verified in the safety cell that Plaintiff was not bringing any weapons/drugs into the facility. The County has a strong interest in protecting other inmates and the deputies inside the Main Jail by strip searching Plaintiff. The government intrusion was minimal because no deputy punched or kicked Plaintiff, and the only force used on Plaintiff which is challenged is Deputies taking Plaintiff to the ground on the padded floor. This is a very minimal intrusion with a significant government interest to complete the strip search.

### c. Severity

Here, the use of force by Deputies Ranum, Hopeck and Gonzales was the least amount of force necessary to complete the strip search. It is undisputed Deputies Ranum, Hopeck and Gonzales did not punch, strike, or kick Plaintiff and that the only complained "excessive force" alleged by Plaintiff is Deputies Ranum and Gonzales grabbing Plaintiff's legs and pulling him to

10

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

1  the ground so that they could remove his pants and underwear. (UMFs 44-46, 53) Plaintiff's crime

2  involved issues of noncompliance leading up the strip search and safely completing the strip

3  search inside the safety cell (rather than turning around towards deputies). As such, the severity of

4  the crime favors the Defendants.

### d. Threat

6      The Ninth Circuit has made plain—repeatedly—the importance of the threat to officer

7  safety: "the most important factor under Graham is whether the suspect posed an immediate threat

8  to the safety of the officers or others." Bryan, 630 F.3d at 826 (citing Smith v. City of Hemet, 394

9  F.3d 689, 702 (9th Cir. 2005). Here, video evidence and testimony from Deputies Hopeck, Ranum

10 and Gonzales establish Plaintiff was shifting his body weight during the booking photographs and

11 required four deputies to be escorted through booking. (UMFs 18-23, 65-67) Plaintiff's lack of

12 cooperation carried into the safety cell where he turned his upper body towards deputies in the

13 safety cell and required multiple warnings and a control hold to maintain control of Plaintiff.

14 (UMFs 40-45) Defendants believed Plaintiff posed a potential larger threat if they released their

15 control hold on Plaintiff. (UMF 60) Defendants were concerned Plaintiff may attempt to strike

16 them because Plaintiff continued to turn around after being told to face the wall. (UMF 44)

17 Plaintiff's passive resistance during the strip search posed a potential threat and required the use of

18 minimal force in taking Plaintiff to the ground. Therefore, Plaintiff's threat level is moderate.

### e. Resistance

20      During the booking process, cooperative inmates will be escorted without handcuffs to

21 have their photographs taken and strip searched. (UMF 65) Cooperative inmates will also only

22 require one or two deputies to assist with the strip search. (UMF 66) Plaintiff was handcuffed

23 during the booking process and required additional deputies to hold Plaintiff during the booking

24 photo. (UMF 67) Four deputies were involved with Plaintiff's strip search because he was

25 uncooperative. Plaintiff resisted during the entire booking process including moving his body and

26 arms during the booking photo, failing to follow commands inside the safety cell, and turning

27 around during the strip search process. Plaintiff stopped resisting once he was on the ground inside

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

the safety cell and the Defendants' could complete their strip search.

### f. Other Factors

Non-Graham factors also demonstrate the governmental interest: warnings, and lack of alternative means. The Ninth Circuit has consistently recognized these factors. Bryan, 630 F.3d at 831; Mattos, 661 F.3d at 445. Warnings are not requited before a deputy uses force. Here, Deputy Hopeck provided multiple verbal warnings to Plaintiff to relax his thumbs during the strip search prior to force being used. (UMFs 41, 45) Furthermore, no reasonable alternatives existed, because as discussed above, Defendants could not reasonably retreat and retry the strip search at a later period. Plaintiff was out of handcuffs at this point and the safest and most reasonable means were to place Plaintiff on the ground rather than attempt to either (i) use force to place handcuffs on Plaintiff again or (ii) retreat from the safety cell and hope that Plaintiff did not begin a physical altercation with the deputies.

### g. Balancing

The last Graham step is to balance the level of force against the government interest at stake and determine if the force is justified. In the prison and jail context, roughly similar amounts of force have been found insufficient to support excessive force claims. Grant v. Palomares, 2014 WL 466251, 17 (E.D. Cal., Feb. 5, 2014), adopted by, 2014 WL 2155233 (E.D. Cal., Apr. 9, 2014) (force was not excessive when defendant handcuffed inmate, pulled inmate's elbow back while pushing his torso, and then forcefully slammed inmate from seated position into a prone position); Ackley v. Carroll, 2011 WL 2160896, *7-8 (E.D. Cal., June 1, 2011), adopted by, 2011 WL 2909891 (E.D. Cal., Jul. 13, 2011) (pushing inmate against a wall and kicking his leg during pat-down search was a *de minimis* use of force not actionable under the Eighth Amendment); Moore v. Machado, 2009 WL 4051082, *4-5 (N.D. Cal., Nov. 20, 2009) (throwing the inmate against a wall and bending or twisting his arm while tightly handcuffing him was a *de minimis* use of force not actionable under the Eighth Amendment); *see generally* Graham, 109 S. Ct. at 1872 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."); Oneal v. Smith, 2015 WL10938258 *9-10

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

(finding no excessive force when plaintiff claimed he did not turn away from wall and did not resist, and the court found that what officer Smith viewed as a wrist control hold may have appeared to plaintiff as bending his wrists in an attempt to break his limbs; and what Smith viewed as a mandibular restraint may have appeared to plaintiff as choking him and digging into his neck, and officer Smith's denial of kicking plaintiff's legs and stepping on Plaintiff's feet with Plaintiff's account all amounted to no claims of liability).)

Here, the <u>Grant,</u> <u>Moore</u> and <u>Oneal</u> cases on point and establish the force used on Plaintiff was de minimis and necessary to complete the objective. On balance the force used was justifiable and reasonable based on the government interest in needing to strip search Plaintiff and verifying he did not have drugs/weapons. The force used was proportional to the needs of completing the strip search, and the entirety of the use of force amounted to grabbing Plaintiff's legs and pulling him to the ground. As such, the Court should find Defendants did not violate Plaintiff's constitutional rights.

**2.  Defendants Hopeck, Ranum, Gonzales, and Wilson are entitled to qualified immunity for Plaintiff's alleged fourth amendment violation because they did not violate clearly established law**

In determining whether an officer is entitled to qualified immunity, the Court considers: (1) whether there has been a violation of a constitution right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. <u>C.V. by and through Villegas v. City of Anaheim</u>, 823 F.3d 1252, 1255 (9th Cir. 2016). The Supreme Court has pointed out that courts may determine which prong of qualified immunity they should analyze first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236-237 (2009). Addressing the second prong before the first is especially appropriate where the court will rather quickly and easily decide there is no violation of clearly established law. <u>Id</u>. at 239. Qualified immunity is a question of law to be decided by the court. <u>Hunter v. Bryant</u>, 502 U.S. 224, 228 (1991); <u>Torres v. City of Los Angeles</u>, 548 F.3d 1197, 1210 (9th Cir. 2008). The plaintiff bears the burden of showing that the rights allegedly violated were clearly established. <u>Shafer v. County of Santa Barbara</u>, 868 F.3d 1110, 1118 (9th Cir. 2017).

Qualified immunity attaches when an official's conduct does not violate clearly established

statutory or constitutional rights which a reasonable officer would have known. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018), citing to White v. Pauly, 137 S. Ct. 548, 551 (2017). Because the focus is on whether the officer had fair notice that his/her conduct was unlawful, reasonableness is judged from the backdrop of the law at the time of the conduct. Kisela, 138 S. Ct. at 1152.

The Supreme Court's case law does not require a case directly on point for a right to be clearly established; however, existing precedent must have placed a statutory or constitutional question beyond debate. Kisela, 138 S. Ct. at 1152. See also S.B., 864 F.3d at 1015, stating that precedent must put the defendant on clear notice that using deadly force in the particular circumstances would be excessive. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law. Kisela, 138 S. Ct. at 1152.

The Supreme Court has repeatedly told courts, and the Ninth Circuit in particular, not to define "clearly established" at a high level of generality. Id., citing City and County of San Francisco v. Sheehan 135 S. Ct. 1765, 1775-1776 (2015). Clearly established law must be "particularized" to the facts of the case. Pauly, 137 S. Ct. at 552, citing to Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987); see also City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) (under Supreme Court precedent, the clearly established right must be defined with specificity.).

Specificity is especially important in the Fourth Amendment context, where the Supreme Court has recognized that it is difficult for an officer to determine how the law on excessive force will apply to the factual situation the officer confronts. City of Escondido, 139 S. Ct. at 503, citing to Kisela, 138 S. Ct. at 1152 (2018); District of Columbia v. Wasby, 135 S. Ct. 577, 593 (2018); Pauly, 137 S. Ct. at 551; and Mullenix v. Luna, 136 S. Ct. 305, 308 (2015). An officer is entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. Kisela, 138 S.Ct. 1153, citing to Mullenix, 136 S. Ct. at 305.

The general rules set forth in Tennessee v. Gardner, 471 U.S. 1 (1985) and Graham v. Connor, 490 U.S. 386 (1989), do not by themselves create clearly established law outside of the obvious case. See Kisela, 138 S. Ct. at 1153. An officer cannot be said to have violated a clearly

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

established right unless the right's contours were sufficiently definite that any reasonable official in defendant's shoes would have understood that he or she was violating it. *Id.,* citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). The Ninth Circuit has expressly acknowledged the Supreme Court. See <u>S.B.,</u> 864 F.3d at 1015-1016 ("We hear the Supreme Court loud and clear. Before a court can impose liability on [defendant], we must identify precedent as of [the date of the incident] that put [defendant] on clear notice that using deadly force in these particular circumstances would be excessive"); see also <u>Shafer v County of Santa Barbara</u>, 868 F.3d 1110, 1117 (9th Cir. 2018) ("We are mindful of the Supreme Court's pronouncement in <u>White v. Pauly</u> that to satisfy this step into qualified immunity analysis, we generally must 'identify a case where an officer acting under similar circumstances as [defendant] was held to have violated the Fourth Amendment'").

Here, Plaintiff bears the burden and there was no clearly established law that would have put Defendants on notice that their conduct would have violated Plaintiff's rights. Courts have previously granted qualified immunity against officers who have used forced against passively resistant detainees. (See <u>Oneal v. Smith,</u> 2015 WL10938258 *11 (C.D. Cal 2015). The question is whether a reasonable officer in Defendants Hopeck, Ranum, Wilson, and Gonzales' position would have understood that using the amount of force described by Plaintiff in turning his body multiple times towards the deputies, not facing the wall, and video surveillance showing Plaintiff turning around to speak/yell at the deputies amounted to a violation of the arrestee's constitutional rights. Defendants' used the least amount of force possibly, starting with nonverbal commands, increasing to control holds, and finally placing Plaintiff on the ground to complete the strip search. Defendants never punched, kicked, or struck Plaintiff but only grabbed Plaintiff's legs to take him to the ground. Thus, Defendants are entitled to qualified immunity.

**B.      Plaintiff's Second Claim for Relief for Monell Violation Fails to Allege a Constitutional Violation**

A <u>Monell</u> claim is the only means to attach liability to a municipality under 42 U.S.C. § 1983 because there is no *respondeat superior* liability for excessive force constitutional claims

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   against a municipality under section 1983 as a matter of law. <u>Monell v. Department of Social</u>

2   <u>Services</u> (1978) 436 U.S. 658 690-691 ("[A] municipality cannot be held liable solely because it

3   employs a tortfeasor."); <u>Via v. City of Fairfield,</u> 833 F.Supp.2d 1189, 1195-96 (E.D. Cal. 2011);

4   <u>Davis v. Mason County</u>, 927 F.2d 1473, 1480 (9th Cir. 1991)

5        The local government unit "itself must cause the constitutional deprivation." <u>Gillette v.</u>

6   <u>Delmore</u>, 979 F.2d 1342, 1346 (9th Cir.1992), cert. denied, 510 U.S. 932 (1993); <u>Hillblom v.</u>

7   <u>County of Fresno,</u> 539 F.Supp.2d 1192, 1203 (E.D. Cal. 2008). Thus, a public entity cannot be

8   held liable based simply on vicarious liability for the alleged wrongdoings of its employees as a

9   matter of law. To maintain a section 1983 claim against a local government, a plaintiff must

10  establish the requisite culpability (a "policy or custom" attributable to municipal policymakers)

11  and the requisite causation (the policy or custom as the "moving force" behind the constitutional

12  deprivation). <u>Monell</u>, 436 U.S. at 691-694. Generally, "practice or custom," for purposes of

13  <u>Monell</u> liability means any permanent, widespread, well-settled practice or custom that constitutes

14  a "standard, permanent and well-settled operating procedure of the defendant municipality."

15  <u>Hunter v. County. of Sacramento</u>, 652 F.3d 1225, 1233 (9th Cir. 2011). The series of qualifiers in

16  this definition – "permanent," "widespread," "well-settled," and "standard operating procedure"-

17  emphasize a topical and temporal requirement for such a finding and that a practice must be

18  pervasive and of significant duration, "not be predicated on isolated or sporadic incidents." <u>Id</u>.;

19  <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 964 (9th Cir. 2008).

20          **1.      There is no evidence of a constitutional violation**

21          Plaintiff cannot establish an underlying constitutional violation regarding the excessive

22  force under *supra* Section (IV), or that any underlying constitutional violation was the moving

23  force of the violation. As such, Plaintiff's second claim for relief under <u>Monell</u> fails.

24          **2.      There is no constitutional violation when a defendant fails to follow internal
                    policies**

25

26          Plaintiff may attempt to allege that Sacramento County failed to follow Sacramento

27  County Operations Order—Prisoner Searches (k)(1)-(4) because Plaintiff was not left alone in the

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

1   isolation cell prior to being strip searched. First, Defendants did not violate the strip search policy.

2   Lt. Mayes, the County's PMK on the policy, testified the policy is not sequential but rather

3   factors/guidance for deputies to use during a strip search. (UMFs 57-58) Furthermore, the

4   testimony of Lt. Mayes establishes that the policy was followed by the Defendants.

5       Even if the Court believes the policy was violated; whether or not the individually named

6   Defendants violated an internal Jail policy is simply not relevant to whether or not they are liable

7   to Plaintiff in this matter. Davis v. Washington State Department of Social and Health Services,

8   795 Fed.Appx 544, 545 (9th Cir. 2020) (stating "the focus is on whether there is a violation of

9   federal statutory or constitutional rights" not whether there was a violation of a state right or

10  "internal department policy."). The conduct by a government official that violates some state

11  statutory or administrative provision is not necessarily constitutionally unreasonable. Davis v.

12  Scherer, 468 U.S. 183, 193-94 (1984). The issue is whether the Defendants violated Plaintiff's

13  Constitutional Rights, or liable under another legal theory, not whether they violated an internal

14  policy or guideline of the Jail. (Nesby v. City of Oakland, 2007 WL 831765 * 21 (N.D. Cal. 2007)

15  holding "the internal standards set by the police department do not confer federal constitutional

16  rights on detainees. Only the Federal Constitution or laws can be the underlying basis for a section

17  1983 claim.") (Backlund v. Barnhart, 778 F.2d 1386, 1390 (9th Cir. 1985) (dismissing plaintiffs' §

18  1983 claim because they "failed to show a violation of any constitutional right," despite violation

19  of internal policy). It is constitutionally permissible to strip search inmates arrested on

20  drugs/weapons charges prior to placing them in a housing unit and needing to use force such as

21  placing the inmate on the ground to gain compliance. As such, if the Court believes the County

22  violated Sacramento County Operations Order—Prisoner Searches (k)(1)-(4), Defendants' internal

23  policy violation is not enough to establish *Monell* liability.

24      Courts also routinely grant qualified immunity when deputies violate internal policy. Case

25  v. Kitsap County Sheriff's Dept., 249 F.3d 921, 929-930 (9th Cir. 2001) (granting qualified

26  immunity even though deputies violated internal department policy); Bonilla-Chirinos v.

27  Maggiano, 776 Fed.Appx. 520 (9th Cir. 2019) (granting qualified immunity for failure to provide

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

arrestee phone call despite alleged violation of internal policy because "whether the [officers] violated a state law or internal departmental policy is not the focus of our inquiry."); Cousins v. Lockyer 568 F.3d 1063, 1070 (9th Cir. 2009) ("the remaining defendants are entitled to qualified immunity from the federal claims because state departmental regulations do not establish a federal *constitutional* violation.").) Therefore, the Court may grant qualified immunity to the individual Defendants if the violation of the policy violated Plaintiff's constitutional rights.

### 3. There is no evidence of a custom, policy, or practice that led to a violation of constitutional rights

A Plaintiff cannot prove a Monell claim simply by identifying employee conduct that is attributable to the municipality. The plaintiff must prove that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997). Individual incidents of unconstitutional behavior by an employee are insufficient to establish a Monell liability. McDade v. West, 223 F.3d 1135, 1141 (9th Cir. 2000). "Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom. Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from custom." Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989). "Instead, it is when [the] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that [make] the government as an entity responsible under § 1983." Monell, 436 U.S. at 694.

There also must be a close causal connection between the alleged constitutional deficient policy and the resulting injury. City of Canton v. Harris, 489 U.S. 378, 385 (1989). If Plaintiff intends to argue a ratification theory, they must provide evidence that a policymaker found that unconstitutional conduct actually occurred, and then made a conscious, affirmative choice to approve it. Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003) And, Plaintiff must show a causal nexus between prior misconduct and a later allegation of excessive force, which

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

requires proof of factually similar complaints of misconduct. <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1162 (11th Cir. 2005).

Here, it is not a policy violation that constitutes a <u>Monell</u> violation, but rather the policy itself must be the moving force behind the violation. Plaintiff alleges excessive force during the strip search and Plaintiff cannot prove that Operations Order or General Order on Use of Force were the moving force behind the constitutional violation. (Ex. S - Operations Order – Use of Force; Ex. T - General Order – Use of Force) The Operations Order – Prisoner Strip Searches is not the moving force behind the constitutional violation because the alleged moving force is from excessive force and not completing a strip search. Plaintiff has failed to develop evidence of prior unconstitutional acts, policies or procedures leading to a constitutional violation, or any ratification of prior unconstitutional behavior, sufficient to prove any <u>Monell</u> theory of liability. He also cannot prove any causal connection between any unconstitutional policy and his harm.

**4.     There is no evidence that the Sacramento County Sheriff's Department was deliberately indifferent to the training needs of its deputies.**

In <u>Harris</u>, 489 U.S. 378, the Supreme Court held that, in some instances, a public entity may be liable under § 1983 for a "failure to train" its police officers. However, the Court held that liability exists only when the failure to train amounts to a "deliberate indifference" to the plaintiff's (or decedent's) civil rights. <u>Ting v. U.S.</u>, 927 F.2d 1504, 1512 (9th Cir. 1991) (finding no inadequate training based only on plaintiff's showing that better or more training could have averted harm, where the deficiency did not represent a conscious choice). Deliberate indifference is a stringent standard requiring "proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011). Plaintiff here must demonstrate that the Sheriff's Department was on notice that a "particular omission" in training programs caused the violation Plaintiff's constitutional rights. <u>Connick</u>, 563 U.S. at 61.

Plaintiff can present no such evidence. There is no evidence of prior incidents and Plaintiff cannot establish that any such prior incidents involved constitutional violations thereby putting the County on notice. <u>Johnson v. City of Vallejo</u>, 99 F. Supp. 3d 1212, 1222 (E.D. Cal. 2015)

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(granting summary judgment on <u>Monell</u> claims; while evidence of multiple shootings within two years allegedly showed pattern of "shoot-first, non-emergency police encounters" and indicated "some systemic issues," it was insufficient for purposes of <u>Monell</u> because there was no evidence that "officers committed other constitutional violations"). Furthermore, all that a municipality needs to establish to prevail on a failure to train claim is that it complied with state-mandated training standards for its officers. <u>Brown v. Bryan Co.</u>, 53 F.3d 1410, 1424-25 (5th Cir. 1995). Plaintiff cannot present any evidence that Defendant Sheriff's Department was deliberately indifferent to the training needs of the deputies. If Plaintiff's allegation is that any individual Sheriff's Department Defendant in this case may not have followed such policies and training guidelines does not establish that the Sheriff's Department was deliberately indifferent to Plaintiff's rights. <u>Sheehan v. City & Cnty. of San Francisco</u>, 743 F.3d 1211, 1216-1217 (9th Cir. 2014), rev'd on other grounds, <u>City & Cnty. of San Francisco v. Sheehan</u>, 135 S. Ct. 1765 (2015). To the extent Plaintiff may attempt to show that the training of any of the individual Sheriff's Department deputy specifically was deficient, such an argument would prove fruitless as <u>Monell</u> liability cannot be established by showing only that "a particular officer may be unsatisfactorily trained." <u>Blakenhorn v. City of Orange</u>, 485 F.3d 463, 484 (9th Cir. 2007) ("evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy"). Any failure to train theory based on other claims of excessive force made against the deputies are likewise of no consequence. As such, Plaintiff's <u>Monell</u> claim against Sheriff's Department fails as a matter of law.

## V. CONCLUSION

As such, the Court should grant Defendants' Motion for Summary Judgment in its entirety.

Dated: October 19, 2021

PORTER SCOTT
A PROFESSIONAL CORPORATION

By _/s/ Matthew W. Gross_____
Carl L. Fessenden
Matthew W. Gross
Attorneys for Defendants

{02464731.DOCX}    20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PORTER | SCOTT
350 University Ave., Suite 200
Sacramento, CA 95825
TEL. 916.929.1481
FAX: 916.927.3706